IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KENNETH PARKER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 11-0066-WS-B |
| | ) | |
| ST. PAUL TRAVELERS, etc., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the Court on the defendant's motion for summary judgment. (Doc. 45). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 46-47, 53-55, 59), and the motion is ripe for resolution. After carefully considering the foregoing, the Court concludes that the motion is due to be denied.

## BACKGROUND

The plaintiffs own various parcels of property they say have been damaged by erosion due to a municipal drainage project. In 2003, they filed suit in state court against PACO Contractors, Inc. ("PACO") and the City of Mobile ("the City"). In 2008, they received a series of default judgments against PACO. In this action, the plaintiffs seek to collect on their judgments from the defendant (PACO's insurer) pursuant to Alabama Code § 27-23-2.

The defendant acknowledges that it issued two sequential policies ("the Policies") to PACO covering the period March 2000 to March 2002. The defendant's primary argument is that it did not receive timely notice of any accident or incident involving the plaintiffs or of the ensuing lawsuit. The defendant also argues that the claims of two plaintiffs are due to be dismissed because they died before the underlying judgments

[1]

were entered in their names and because this lawsuit has been pursued in their names despite their deaths.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact

or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick*, 2 F.3d at 1115.

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

## I. Notice.

The parties agree that "defenses to liability available to the insurer in an action brought by the insured would also be available to the insurer in an action brought pursuant to §§ 27-3-1 and -2 by the injured party." *Nationwide Mutual Fire Insurance Co. v. Estate of Files*, 10 So. 3d 533, 534-35 (Ala. 2008) (internal quotes omitted). Such defenses include a failure to comply with a policy's notice provisions. *Id.* at 535; *accord North River Insurance Co. v. Overton*, 59 So. 3d 1, 12-13 (Ala. 2010).

The Policies state in pertinent part as follows:

You or other protected persons are required to perform the duties described below when an accident or incident happens that could result in liability damages covered under this policy. Failure to comply could affect coverage.
….

If an accident or incident happens that may involve liability protection provided in this policy, you or any other protected person must:

…

[3]

> 2. Tell us or our agent what happened as soon as possible. ….
>
> 3. Send us a copy of all written demands. Also send us a copy of all legal documents if someone starts a lawsuit.

(Doc. 47, Exhibit 1 at 13; *id.*, Exhibit 2 at 13).

### A. Notice of Accident or Incident.

In the year 2000, PACO contracted with the City to perform construction work on a project known as Moore's Creek Drainage Improvement Project ("the Project"). (Doc. 46 at 4; Doc. 47, Exhibit 3). In January 2001, the plaintiffs and several others wrote a letter to the City and to PACO concerning the Project. (*Id.*, Exhibit 5). The defendant asserts that the letter triggered the notice provisions of the Policies, (Doc. 46 at 19, 20 n.4; Doc. 59 at 2), but it offers no textual explanation for its assertion. The letter does speak of erosion, but it traces the problem to a different project conducted many years earlier, noting that "[t]his problem was not handled previously and we request that this situation be addressed now." (Doc. 47, Exhibit 5). The defendant has failed to show that this letter put PACO on notice of an "accident or incident" within the contemplation of the Policies so as to trigger any notification requirement.

In December 2001, plaintiff's counsel wrote an attorney representing the City, advising that he had been authorized to initiate litigation against the City, PACO and another entity but requesting a meeting in an effort to work out a compromise solution. (Doc. 54, Exhibit 2). The City's lawyer responded that PACO was represented by Mr. Ed Bowron. (*Id.*, Exhibit 3). In January and February 2002, plaintiff's counsel wrote Bowron complaining of erosion, opining that PACO "may have some exposure," and requesting a meeting in an effort to resolve the matter without litigation. (*Id.*, Exhibits 3A, 3B). The plaintiff asserts that these letters satisfied any notice requirement of the Policies. (Doc. 55 at 7).

The defendant responds that the plaintiffs have no evidence Bowron constituted "our agent" within the notice provision. (Doc. 59 at 3-5). However, there is evidence that, at the time of these letters and for several years thereafter, Bowron represented PACO in connection with another lawsuit brought by other homeowners along the stream ("the GAC lawsuit") and that he communicated throughout that time with Mr. Steve Patterson, a claims specialist with the defendant, (Doc. 46 at 7; Doc. 47, Exhibit 16 at 11, 34), presumably because he had been hired by the defendant. The defendant does not explain how these facts could not support a reasonable inference that Bowron was its agent.[1]

In another context, the defendant argues that the Policies mandate that notice come to it (or its agent) directly from its insured and that notice from the plaintiffs is thus immaterial. (Doc. 46 at 21-22). It offers no legal authority to support this proposition.[2] At any rate, since Bowron was representing PACO in January 2002, it is at least arguable that notice to the defendant (Bowron as its agent) was received from PACO (Bowron as its agent).

---

[1] The defendant notes that Bowron was not its lawyer, (Doc. 59 at 4-5), which is correct but irrelevant, since a principal's agent need not be the principal's attorney. The defendant suggests that Bowron must have been formally appointed an agent precisely for the purpose of receiving notice, (*id.* at 5), but it offers no discernible argument or legal authority that the undefined term "our agent" must be so narrowly interpreted. The defendant insists the plaintiffs must now "prov[e]" agency, (*id.*), but on motion for summary judgment the initial burden is on the defendant to show that the plaintiffs cannot prove agency, and it has not met this threshold burden. The defendant complains that Bowron did not forward to it the 2002 letters, (Doc. 46 at 8), but this is irrelevant since the Policies make notice to the defendant's agent the same as notice to the defendant.

[2] The plaintiffs note that, in *Safeway Insurance Co. v. Thompson*, 688 So. 2d 271 (Ala. Civ. App. 1996), notice to the insurer from the plaintiffs was deemed adequate. (Doc. 53 at 5). The defendant attempts to distinguish *Safeway*, (Doc. 59 at 10-11), but it does not show that Alabama law allows notice from the plaintiff to suffice only in the precise circumstances there involved.

The parties agree that the Polices are to be construed under Alabama law. "The term 'as soon as practicable' has been construed many times by this Court to mean that notice must be given within a reasonable time in view of the facts and circumstances of the case." *Reeves v. State Farm Fire & Casualty Co*., 539 So. 2d 252, 255 (Ala. 1989). The Policies provide that notice of an accident or incident be given "as soon as possible," and the parties do not dispute that the same test applies to this language.

"Whether a delay in giving notice is reasonable depends on the length of the delay and the reasons or excuses for the delay." *Reeves*, 539 So. 2d at 255. As the defendant notes, (Doc. 46 at 18), "[a] five-month delay in giving notice is sufficiently protracted as to require the insured to offer evidence of a reasonable excuse for the delay." *Nationwide Estate of Files*, 10 So. 3d at 536. However, as noted above the defendant has not shown that the January 2001 letter triggered a notification duty. Nor has the defendant shown that any other event preceding the January 2002 letter triggered such a duty. Thus, it has not shown that the January 2002 notification was delayed by five or more months so as to require the plaintiffs to offer a reasonable excuse for the delay.

In summary, on the record and argument presented it remains open to the plaintiffs to establish that the defendant received timely, appropriate notice of the accident or incident at issue.

**B. Copy of Legal Documents.**

The plaintiffs sued PACO in July 2003. (Doc. 47, Exhibit 4 at 1). PACO was served with process on approximately October 1, 2003. (*Id*., Exhibits 11, 12). Because PACO had filed a petition in bankruptcy in March 2002, (*id*., Exhibit 14), the trustee responded to the complaint with a notice of bankruptcy. (*Id*., Exhibit 15). In April 2006, the plaintiffs sought relief from the automatic stay and, in May 2006, received relief "as to recovery … in regard to insurance proceeds, if any." (*Id*., Exhibits 19, 20). In July 2007, plaintiff's counsel wrote Bowron and advised him of the relief from stay and of a September trial setting. (Doc. 54, Exhibit 6). On August 1, 2007, Bowron received from

plaintiff's counsel a telefaxed copy of the complaint against PACO, which he telefaxed to the defendant the same day. (Doc. 37, Exhibit 21). The defendant did not receive notice of the lawsuit until then.

The defendant argues that the 45-month gap between service of the complaint on PACO and the defendant's receipt of the complaint does not satisfy the Policies' notice requirement. The defendant appears to believe it was entitled to prompt notice of the institution of the lawsuit, (Doc. 46 at 16), but it does not explain its assumption, which runs contrary to the language of the Policies. Paragraph 2 requires notice of an accident or incident as soon as possible, but it does not purport to require notice of the filing of a lawsuit, unless no previous notice of the accident or incident has occurred. Since, under the plaintiff's version, the defendant had already received notice of the accident or incident, Paragraph 2 did not require a second notice of the accident or incident in the form of notice of the lawsuit. Paragraph 3 requires submission of the complaint (which would of course provide notice of the lawsuit), but it imposes no time limitation for doing so, either "as soon as possible" or otherwise.[3]

In short, the defendant has not shown that the Policies require any notice of the lawsuit other than submission of the complaint, and it has not shown that the Policies require that submission of the complaint be made within any particular time. It has thus failed to show that its 2007 receipt of the complaint was untimely.[4]

The defendant returns to its argument that the Policies require that notice be given by PACO only, to the exclusion of notice from anyone else. (Doc. 46 at 21-22). In

---

[3] Although the parties have not addressed the applicable rules of construction, the Court notes that Alabama courts "will construe all the conditions of the contract and the obligations imposed, liberally in favor of the assured, and strictly against the insurer." *Sovereign Camp, W.O.W. v. Craft*, 94 So. 831, 833 (Ala. 1922) (internal quotes omitted).

[4] The defendant suggests vaguely that, in addition to the complaint, there was a "written demand" that Paragraph 3 required to be sent to it. (Doc. 46 at 16). The defendant, however, identifies no such demand. Certainly the January 2001, January 2002 and February 2002 letters do not fit the common conception of a "demand," since no particular relief is requested therein.

*Safeway Insurance Co. v. Thompson*, 688 So. 2d 271 (Ala. Civ. App. 1996), the complaint was forwarded to the insurer by the plaintiffs rather than by the insured, and the Court of Civil Appeals held that this, under the circumstances, satisfied the policy's notice requirement. *Id*. at 273-74. The defendant argues that *Safeway* is distinguishable because the insured there promptly notified the insurer of the accident and because the plaintiffs made a demand of the insurer before filing suit. (Doc. 59 at 10-11). As discussed above, the plaintiffs may be able to establish that the defendant received timely notice of the accident or incident, and it can make little difference whether the defendant also received a warning of a future lawsuit. Indeed, the defendant distills from *Safeway* the principle that, once "the insurer received notice in a timely fashion, it could not avoid coverage based on a technicality regarding delivery of the actual suit papers." (*Id*. at 11). But this principle argues against the defendant: once it received timely notice of the accident or incident in early 2002, it could not avoid coverage based on the technicality that timely delivery of the actual suit papers came from the plaintiffs rather than from PACO.

In summary, on the record and argument presented it remains open to the plaintiffs to establish that the defendant timely received a copy of the complaint from an appropriate source.

### C. Waiver.

The plaintiffs expound at length concerning the defendant's allegedly tardy invocation of the notice provision (raising it for the first time two years after receiving the complaint, and long after having closed the file on the single ground that the Policies provided "no coverage for the policy period which the claim is made"), and they conclude that the defendant by its conduct waived the right to rely on any non-compliance with the notice provision. (Doc. 53 at 4-6). Because it appears that an

insurer may waive notice and other conditions to coverage by not timely asserting them,[5] the defendant may not obtain summary judgment without effectively addressing the plaintiffs' waiver argument.

The defendant argues the plaintiffs have no evidence that it ever changed its reason for refusing to pay benefits under the Policies. (Doc. 59 at 12). The January 2008 file entry on which the plaintiffs rely reads as follows:

> Laura and I communicated. we will close this file as no coverage for the policy period which the claim is made. file closed out.

(Doc. 54, Exhibit 15 at 3). A reasonable inference from this inartful language is that the defendant refused to pay because any occurrence or loss happened before the effective date of the first Policy or after the expiration of the second Policy.[6] This would be an entirely different reason than a failure to give notice. There is thus ample evidence the defendant changed its reason for refusing to pay.

The defendant's only other argument is that any change of position is "not relevant." (Doc. 59 at 12). The defendant's assertion ignores the plaintiff's invocation of waiver and is thus ineffectual.

In summary, on the record and argument presented it remains open to the plaintiffs to establish that the defendant waived any failure to comply with the Policies' notice provisions.

---

[5] *See, e.g., National Life & Accident Insurance Co. v. Allen*, 234 So. 2d 567, 569 (Ala. 1970); *St. Paul Fire & Marine Insurance Co. v. Smith*, 194 So. 2d 830, 833 (Ala. 1967); *American Automobile Insurance Co. v. English*, 94 So. 2d 397, 402 (Ala. 1957); *First Alabama Bank, N.A. v. First State Insurance Co.*, 899 F.2d 1045, 1063 (11th Cir. 1990).

[6] The entry's own author is unable to offer any other interpretation. (Doc. 47, Exhibit 16 at 72-73).

## II. Deceased Plaintiffs.

Cora Clausen died in September 2005, and Spencer Dickey died in April 2008. Nevertheless, the underlying default judgments were thereafter entered in their names and this lawsuit was instituted in their names.

The defendant argues that this lawsuit as to Clausen and Dickey is a "nullity" under Alabama law and that, even if it is not, it is too late for their personal representatives to be substituted under Rule 17(a). (Doc. 46 at 27-28). The Court has by separate order granted the personal representatives' Rule 17 motion, rejecting therein the defense arguments identified above.

The defendant also argues that, even if substitution under Rule 17 is properly allowed, the underlying judgments are void because Clausen and Dickey died before the judgments were entered in their names. (Doc. 46 at 28-29). The defendant relies on *Mutual Service Funeral Homes v. Fehler*, 58 So. 2d 770 (1952), in which it is stated that "the principle is well understood that a judgment in favor of or against a dead man is void absolutely." *Id*. at 773. A similar view is expressed in several cases of more ancient vintage,[7] but the trail apparently grows cold with *Fehler*.

As pointed out by the plaintiffs, (Doc. 58 at 5), there is a different, more recent trail. "A judgment is void only if the court rendering it lacked jurisdiction of the subject matter or of the parties, or if it acted in a manner inconsistent with due process." *Ex parte N.B.*, 66 So. 3d 249, 254 (Ala. 2010) (internal quotes omitted). The defendant, which does not address the plaintiffs' line of authority, has not shown that it does not apply or does not lead to a different result. Thus, while the plaintiffs' failure to attempt a

---

[7] *See, e.g., Griffin v. Proctor*, 14 So. 2d 116, 119 (Ala. 1943); *McDonald v. Womack*, 107 So. 812, 813 (Ala. 1926).

correction of the judgments is baffling,[8] the defendant has not met its initial burden of showing that the underlying judgments are void.

## CONCLUSION

The Court has and expresses no opinion concerning the ultimate viability of the parties' opposing positions. On the limited argument and authority presented, the defendant's motion for summary judgment is **denied**.

DONE and ORDERED this 21st day of November, 2011.

            s/ WILLIAM H. STEELE
            CHIEF UNITED STATES DISTRICT JUDGE

---

[8] The plaintiffs represented in July that, upon the opening of Clausen's estate, they would request the state court to amend the judgment nunc pro tunc. (Doc. 26 at 2). However, even though letters of administration were issued as to Clausen on August 23 (and as to Dickey on September 19), (Doc. 52, Exhibits 8-9), as of October 31 the docket sheet in the underlying case reflects no activity directed towards amending the judgments. (Doc. 57, Exhibit A at 11). The plaintiffs remain motionless at their peril.